UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESEQUIEL MARQUEZ JR.,

  Plaintiff,

-VS-

EQUIFAX INFORMATION
SERVICES LLC,

  Defendant.
_____/

CASE NO.:

**JURY TRIAL DEMANDED**

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Esequiel Marquez Jr., sues Equifax Information Services LLC ("Equifax") and alleges:

### **Introduction**

1. This is an action alleging Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA) by selling credit reports inaccurately reporting Plaintiff as deceased.

2. The FCRA creates a private right of action against a consumer reporting agency for the negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, violation of any duty imposed by the FCRA. *Alexander v. Certegy Check Servs.*, No. 8:16-CV-859-17JSS, 2016 U.S. Dist. LEXIS 180072, at *5 (M.D. Fla. Dec. 29, 2016) (*citing Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015)).

3. Plaintiff seeks entry of judgment, actual damages, statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. §§ 1681n and 1681o.

## Jurisdiction, Venue and Parties

4. This Court has original jurisdiction over Plaintiff's claims arising under the FCRA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5. Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Florida, this suit arises out of Defendant's specific conduct with Plaintiff in Florida, and Plaintiff was injured in Florida.

6. Venue is appropriate in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiff's claims occurred in Hillsborough County, Florida.

7. Plaintiff is a natural person residing in Hillsborough County, Florida.

8. At all times relevant, Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Upon information and belief, Equifax is a corporation incorporated under the State of Georgia, authorized to do business in the State of Florida through its registered agent, Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301-2525.

10. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

11. Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## Factual Allegations

12. Plaintiff believes that at least since February 2020, Equifax has marked Plaintiff as "deceased" on his Equifax credit report as to an American Express account.

13. Plaintiff learned about the "deceased" reporting and immediately contacted Equifax. On or about April 1, 2021, Plaintiff disputed the inaccurate reporting and added a "Consumer Statement" indicating:



14. Despite Equifax verifying Plaintiff's personal identifying information and adding the consumer statement to Plaintiff's credit report, Equifax verified

Plaintiff as deceased and has continued to report Plaintiff as deceased through the filing of this complaint.

15. At the same time, Plaintiff also disputed Equifax's reporting of his age. Equifax included Plaintiff's date of birth as December 1, 1970. Plaintiff was born in 1993. Lastly, Plaintiff disputed two J.P Morgan Chase Bank ("JPMCB") accounts where he was being reported as deceased and they both were opened July 25, 1997. Plaintiff would have been four (4) years old when those accounts were open.

16. Despite Equifax receiving information about Plaintiff's actual age, information about the JPMCB accounts not belonging to him, and information that Plaintiff was not deceased, Equifax continued to report Plaintiff's inaccurate information.

17. From April 2021 through February 2022, Equifax continued to report Plaintiff as deceased.

18. Plaintiff pulled his Equifax report on February 1, 2022 (Confirmation Number 2532855422) and he was still reporting as deceased.

19. Plaintiff called JPMCB on February 3, 2022, and explained the inaccuracies within his Equifax report. JPMCB's agent informed him that he needed to re-dispute to Equifax and that they could not help him.

20. Plaintiff also filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), Complaint Id 220201-8045557.

21. Upon information and belief, the CFPB sent Plaintiff's complaint to Equifax. Plaintiff never received a result from Equifax or the CFPB about the complaint.

22. On February 4, 2022, Plaintiff sent a very detailed dispute to Equifax on. Within it, he included:

    a. Images from his Equifax report with the April 1, 2021, Consumer Statement reflecting he was mistakenly being reported as deceased.

    b. He included images from his Equifax report showing the wrong date of birth.

    c. Images of the JPMCB account indicating the "CONSUMER _ DECEASED" notation and the account being opened on July 25, 1987.

    d. An image of "proof of life" as seen below. Plaintiff is seen holding the Tampa Bay Times from February 2, 2022 and is holding his license.

**[INTENTIONALLY LEFT BLANK]**



      e. Plaintiff included a close-up image of his driver's license.

23. Despite Equifax receiving the five (5) page dispute letter with all the information above, Equifax responded in the middle of February indicating they were unable to find a file for Plaintiff.

24. Plaintiff was devastated and on February 24, 2022, Plaintiff sent another detailed dispute letter to Equifax including all the previously produced information and adding more proof of life.

25. Plaintiff's Equifax credit report shows Plaintiff's application on April 30, 2021to McKibben Powersports of Lake Wales. It also reflects numerous publications by Equifax to third parties during the time Equifax was reporting Plaintiff as deceased.

26. Equifax is aware that Plaintiff has been making on-time payments for his THD/CBNA account during the relevant time.

27. Equifax is aware that Plaintiff has been making on-time payments for his Fifth Third Bank account during the relevant time.

28. Plaintiff is not deceased and has been alive throughout the relevant time.

29. Equifax clearly knew Plaintiff was not deceased, as Equifax communicated with Plaintiff and confirmed his identity on April 1, 2021.

30. Despite this, Equifax willingly chose continue reporting that Plaintiff was deceased, when Equifax fully knew he was alive.

31. As a result of Equifax's conduct, Plaintiff has suffered actual damages in the form of a lost loan and credit opportunities, housing opportunities, credit defamation, personal defamation and emotional distress.

32. In particular, Equifax continued to report Plaintiff deceased during a pandemic causing Plaintiff significant anguish.

33. The FCRA requires that Equifax must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

34. The FCRA requires that Equifax must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.

35. Equifax places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

36. Equifax does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

37. Equifax does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

38. Indeed, Equifax employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

39. Even in instances where other data on the face of the consumer's report indicates that he is not deceased, Equifax employs no procedures which assure that a consumer with a "deceased" mark on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

40. Once a "deceased" mark is placed upon a consumer's report, Equifax will not calculate and will not provide a credit score for that consumer.

41. Nevertheless, Equifax routinely sell to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

42. Upon Equifax's reports with a "deceased" mark sold to third parties, Equifax never calculate or provide a credit score for that consumer.

43. Equifax know that many third-party credit issuers require a credit score in order to process a given credit application.

44. Equifax knows that consumers without credit scores are unable to secure any credit from most credit issuers.

45. Equifax knows that living consumers are turned down for credit specifically because Equifax is reporting them as "deceased" and without a credit score.

46. Equifax has been put on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Equifax is reporting them as "deceased" and without a credit score.

47. Equifax has received and documented thousands of disputes from consumers complaining that Equifax's credit reports have them erroneously marked as "deceased."

48. Nevertheless, Equifax employs no procedures which assure that a consumer marked as "deceased" on Equifax's reports are, in fact, deceased.

49. Equifax has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, which reinvestigation was triggered by a consumer dispute.

50. Nor does Equifax employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

51. For years after a consumer's actual death, Equifax will continue to sell for profit credit reports about that consumer.

52. Equifax will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Equifax – meaning that nobody is continuing to buy those reports.

53. Equifax charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

54. Equifax profits from the sale of reports on the deceased.

55. Equifax has in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

56. Equifax knows that truly deceased consumers do not apply for credit.

57. Equifax knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Equifax to be a common and major source of identity theft.

58. Equifax warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

59. Equifax has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

60. Indeed, Equifax sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

61. For consumers who are deceased, there exists no permissible purpose under the FCRA for Equifax to ever sell their credit reports, absent a court order.

62. Equifax knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer,

information that can be used to commit identity theft or for other fraudulent purposes.

63. At all times pertinent hereto, Equifax was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

64. At all times pertinent hereto, the conduct of Equifax, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein.

## COUNT I
## Violations of the Fair Credit Reporting Act as to Equifax

65. Plaintiffs re-allege and reincorporate paragraphs 1 through 64 above.

66. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiffs.  Despite Equifax believing that Plaintiff was dead, it published his credit report (containing the "customer deceased") to several furnishers.  Moreover, Equifax has records of timely payments on several other accounts.   No other furnisher ever reported to Equifax that Plaintiff was deceased.  Equifax does not allow or require  its dispute investigators to contact a consumer disputing a "deceased" status.

67. As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from credit; and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

68. Equifax's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

69. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 USC § 1681n and/or § 1681o.

WHEREFORE, Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against Equifax, to Plaintiff, award Plaintiff her attorney fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

## COUNT II
### Violations of the Fair Credit Reporting Act as to Equifax

70. Plaintiffs re-allege and reincorporate paragraphs 1 through 64 above.

71. Equifax violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable

13

procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has to know can be unreliable. Plaintiff provided all the necessary information to Equifax to conduct a reasonable investigation, but Equifax failed to do so. Equifax was aware Plaintiff was alive and yet failed to do any independent investigation and correct the error. Equifax also failed to investigate when Plaintiff provided all the necessary information and instead sent a letter indicating they could not find Plaintiff's file.

72. As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from credit; and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

73. Equifax's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

74. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 USC § 1681n and/or § 1681o.

WHEREFORE, Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against Equifax, to Plaintiff, award Plaintiff

her attorney fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

**DATED** this 15th day of March 2022.

*Respectfully submitted,*

**/s/Octavio Gomez**
Octavio "Tav" Gomez, Esquire
Florida Bar #: 0338620
Georgia Bar#: 617963
Pennsylvania Bar#: 325066
The Consumer Lawyers PLLC,
3210 W. Cypress St
Tampa, Florida 33609
Telephone: (844) 855-9000
Cell: (813) 299-8537
Facsimile:   (844) 951-3933
Tav@TheConsumerLawyers.com
Jason@TheConsumerLawyers.com
*Attorney for Plaintiff*